UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MAYILAYA G. LADD, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:24-cv-00014-SLC |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Martin O'Malley*, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Mayilaya Ladd appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for child's Supplemental Security Income ("SSI"). (ECF 1).[1] For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

Ladd's mother applied for child's SSI on Ladd's behalf in January 2022, alleging disability as of May 3, 2019, which was subsequently amended to January 16, 2022. (ECF 7 Administrative Record ("AR") 70, 228[2]).[3] This was Ladd's third application for child's SSI; her mother had previously filed two applications on Ladd's behalf, which were denied on May 15, 2019, and November 24, 2021, and not appealed to federal court. (AR 14).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (ECF 13, 14).

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

[3] Ladd was an adolescent at the time of her SSI application and the ALJ's decision, but she was an adult by the time she filed this appeal. (*See* AR 15, 228).

Ladd's January 2022 application was denied initially and upon reconsideration. (AR 118, 131). In May 2023, administrative law judge ("ALJ") Terry Miller conducted an administrative hearing, at which Ladd, who was represented by Tara Budd of Forbes Disability Group, LLC (AR 192-95), and Ladd's mother testified. (AR 39-76). On June 29, 2023, the ALJ rendered an unfavorable decision to Ladd, concluding that Ladd was not disabled because she did not meet a listing or functionally equal a listing by having either "marked" limitations in two domains of childhood functioning or an "extreme" limitation in one domain of childhood functioning. (AR 14-26). The Appeals Council denied Ladd's request for review (AR 5-9), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On January 11, 2024, Ladd filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). In her opening brief, Ladd argues that: (1) the ALJ's finding that Ladd has less-than-marked limitations in the domain of acquiring and using information is not supported by substantial evidence; and (2) the ALJ's finding that Ladd has less-than-marked limitations in the domain of caring for self is not supported by substantial evidence. (ECF 16 at 8-18).

Ladd was sixteen years old when the SSI application was filed in January 2022 and seventeen years old when the ALJ issued his decision. (*See* AR 11, 228). Ladd represented in her SSI application that she was disabled due to "Oppositional Defiant Disorder[,] hostility[,] disobedient[,] defiant behavior[,] anger issues[, and] irritable moods[.]" (AR 244). At school, Ladd had an individualized education plan (IEP). (AR 302-15).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant under the age of eighteen must establish that the claimant "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C).

3

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner evaluates disability claims for children pursuant to a three-step evaluation process, requiring consideration of the following issues, in sequence: "(1) is the child engaged in substantial gainful activity? (2) does the child have a medically determinable impairment that is severe? and, (3) do these impairments meet, medically equal, or . . . functionally equal one of a list of severe impairments set forth in the Listings [20 C.F.R. Part 416, Subpart P, Appendix 1]?" *Edwards ex rel. L.T. v. Colvin*, No. 12 C 7539, 2013 WL 3934228, at *1 (N.D. Ill. July 30, 2013) (citing 20 C.F.R. §§ 416.924(b)-(d)); *see also Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003); *Mara S. ex rel. C.S. v. Kijakazi*, No. 19-cv-8015, 2022 WL 4329033, at *1 (N.D. Ill. Sept. 19, 2022). An affirmative answer at step one, or a negative answer at steps two or three, ends the inquiry and leads to a determination that the child is not disabled. *See Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1; *see also Edwards ex rel. L.T.*, 2013 WL 3934228, at *1.

The question of whether the child's impairment "functionally equals" a listing is unique to child disability claims. *Edwards ex rel. L.T.*, 2013 WL 3934228, at *1 (quotation marks omitted). The ALJ "will look at how appropriately, effectively, and independently [the child] perform[s] [the child's] activities compared to the performance of other children [the same age] who do not have impairments." 20 C.F.R. § 416.926a((b)(1). To find that an impairment functionally equals a listing, the ALJ must consider the impairment's severity in six age-appropriate domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating

4

with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1; *see* 20 C.F.R. § 416.926a(b). If the ALJ finds a "marked" limitation in at least two of the domains or an "extreme" limitation in one domain, the child functionally equals a listing. *Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1 (quotation marks omitted); *see* 20 C.F.R. § 416.926a(d). A marked limitation in a domain means the child's "impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is "more than moderate" but "less than extreme." *Id.* An extreme limitation in a domain means the child's "impairment(s) interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An extreme limitation is "more than marked" and represents the rating given "to the worst limitations." *Id.*

The burden of proof lies with the applicant at each step of the process. *R.J. ex rel. Taylor v. Colvin*, No. 1:11-cv-01001-SEB-DKL, 2014 WL 1328166, at *2 (S.D. Ind. Mar. 28, 2014). "If a child's impairments pass all three steps, and satisfies the duration requirement, then she is determined to be disabled." *Id.*

### B. The Commissioner's Final Decision

In the ALJ's June 29, 2023, decision, which became the final decision of the Commissioner, the ALJ noted at the outset that Ladd was an adolescent both when the application was filed on January 16, 2022, and on the date the ALJ issued his decision. (AR 15). At step one of the three-step analysis, the ALJ found that while Ladd had worked for three different employers in 2022, her earnings did not rise to the level of substantial gainful activity since the application date. (AR 15-16).

At step two, the ALJ found that Ladd had the following severe impairments: specific learning disability/specific reading disorder/dyslexia; attention deficit hyperactivity disorder (ADHD); moderate oppositional defiant disorder, moderate depression, and generalized anxiety disorder; moderate intermittent asthma without complication; and abdominal/epigastric pain including gastroesophageal reflux disease/esophageal dysphasia with mild gastritis/duodenitis. (AR 16). At step three, the ALJ concluded that Ladd did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a listing under 20 C.F.R. Part 416, Subpart P, Appendix 1. (AR 19, 26). Therefore, Ladd's application for child's SSI was denied. (AR 26).

### C. The Domain of Acquiring and Using Information

In seeking a remand, Ladd argues that the ALJ cherry-picked the record and failed to build a logical bridge from the evidence to his conclusion at step three that Ladd did not functionally equal a listing. (ECF 16 at 8). Specifically, Ladd contends that the ALJ's finding of less-than-marked limitations in the domain of acquiring and using information is not supported by substantial evidence. (*Id.* at 8-14). In this domain, the ALJ considers how well the child acquires or learns information, and how well the child uses the information she has learned. 20 C.F.R. § 416.926a(g).

"[A]n ALJ must provide a logical bridge between the evidence and [his] conclusions." *Jarnutowski v. Kijakazi*, 48 F. 4th 769, 773 (7th Cir. 2022) (citation and internal quotation marks omitted). That is, while the ALJ "need not address every piece of evidence," he "must build an accurate and logical bridge from the evidence to his conclusion and articulate some legitimate reason for his decision." *Hightshoe v. Kijakazi*, No. 22-2359, 2023 WL 3531473, at *1 (7th Cir.

May 18, 2023) (citation and internal quotation marks omitted); *see also Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). In doing so, "the ALJ may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (collecting cases); *see also Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." (citation omitted)). Rather, "[t]he ALJ must confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Moore*, 743 F.3d at 1123 (citation omitted); *see also Murphy v. Colvin*, 759 F.3d 811, 817-18 (7th Cir. 2014) (explaining that while an ALJ's decision "need not contain a complete written evaluation of every piece of evidence," it at the same time "may not dismiss a line of evidence contrary to the ruling" (citations and quotation marks omitted)).

Here, Ladd contends that the ALJ "misstated the record and ignored significant evidence" favorable to Ladd's case when assessing the domain of acquiring and using information. (ECF 16 at 9). Ladd asserts the ALJ committed this alleged "egregious error" when paraphrasing the following report from one of Ladd's teachers in the December 2022 IEP: "[Ladd] struggles with tests, but does not use her accommodations in the Learning Lab." (*Id.* (citing AR 23)). Ladd observes that the IEP actually says: "[Mr. Wilcox] did note that [Ladd] struggles with tests, but does use her accommodations in the Learning Lab." (AR 302). Ladd emphasizes that her use of accommodations in the Learning Lab is documented in two other parts of the IEP as well. (ECF 16 at 9-10 (citing AR 311)).

Ladd argues that the ALJ's misstatement is material because the actual evidence establishes

7

two things. First, that Ladd is "taking full advantage of all possible accommodations." (*Id.* at 10); *see* SSR 09-2p, 2009 WL 396032, at *5 (Feb. 18, 2009) ("The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independently the child functions, and the more severe we will find the limitation to be." (footnote omitted)). Second, that even when using accommodations, Ladd "lags behind her non-disabled peers." (ECF 16 at 10); *see* 20 C.F.R. § 416.924a(b)(7) ("[Even] good performance in a special education setting does not mean that [the child is] functioning at the same level as other children [the child's] age who do not have impairments."). As Ladd sees it, "[t]he ALJ's misstatement significantly shifts the severity of [Ladd's] disability because the agency's rules and regulations place specific emphasis on these factors in determining functional equivalence[,] . . . leaving [the ALJ's conclusion] unsupported by substantial evidence." (ECF 16 at 10-11).

Ladd overstates the significance of this single misstatement by the ALJ. Throughout his decision, the ALJ repeatedly acknowledged that Ladd received various accommodations throughout her school day, noting as follows:

- As to special assistance when going to school, [Ladd] reports going to a learning lab where a special education teacher, Mr. McGrew, helps her by reading to her and then helping her to understand what has been read, which special assistance is in all subjects and normally every day for the whole day. (AR 20);

- [Ladd ] notes that getting in trouble at school was usually due to not listening or paying attention, as it is hard to sit and complete assignments, and . . . Mr. McGrew would usually help her through such issues and would walk and talk with her and help calm her down. (AR 21);

- [Ladd] received assistance from a Math teacher, who really helped her over the computer and she was able to pass the class. [Ladd's] mother also notes [Ladd] receiving the extra help from Mr. McGrew in the Tenth and the

8

    Eleventh Grades such that she began to pass classes . . . . (AR 22);

- [Ladd] also has extra time to do and turn in schoolwork, and all assignments are read aloud. (AR 23);

- December 2022 school report notes that the overall records confirm attending DeKalb High School half days with accommodations received within the Learning Lab and attending Choice (online) Academy half days with 80% of the day or more in a general education classroom along with an ongoing IEP due to a specific learning disability with it taking longer to complete assignments and tasks at hand. (*Id.*);

- [Ladd's] daily accessible accommodating resources include a resource period where she can be given additional support on completing assignments, being provided extended time to finish work to the best of her ability, and being provided a small group setting for testing where she can focus on the task at hand, as she becomes easily distracted. (*Id.*);

- Both Mr. McGrew and a Mrs. Troyer were singled out as having provided tremendous help for [Ladd] at school . . . . (*Id.*);

- With the . . . accommodations in place, [Ladd] was noted as doing well staying on pace with online classes, that she was currently passing her three DeKalb High School classes and had already earned credits for her online classes. (*Id.*); and

- The school records note that with the cited accommodations, [Ladd] is reasonably succeeding and continues to pursue a general diploma by way of classes with requirements on par with those of her peers. (AR 25).

Given these numerous other statements by the ALJ about accommodations provided to Ladd during the school day, the ALJ's single misstatement about Ladd's use of the Learning Lab when discussing the contents of the December 2022 IEP, standing alone, does not rise to the level of a reversible error. The Court can confidently predict that correcting this single misstatement on remand would not change the result— that is, the finding that Ladd has less-than-marked limitations in the domain of acquiring and using information. *See Schomas v. Colvin*, 732 F.3d 702, 707-08 (7th Cir. 2013) ("[W]e will not remand a case to the ALJ for further explanation if

9

we can predict with great confidence that the result on remand would be the same." (collecting cases)). "No principle of administrative law or common sense requires [the Court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (collecting cases).

Setting aside the ALJ's misstatement, Ladd further argues that the ALJ's analysis in the domain of acquiring and using information is flawed because the ALJ "fails to confront key pieces of evidence which speak to the critical issue of the gap between [Ladd's] functioning and that of a similar non-disabled child." (ECF 16 at 11). Specifically, Ladd asserts that the ALJ erred by failing to discuss the following statement in the December 2022 IEP: "Not giving [Ladd] services would cause her to fall further behind as she needs the additional supports to continue to make academic growth and close gaps." (*Id.* (quoting AR 310)). Ladd contends this is clear evidence that she is "behind academically, will continue to fall behind, and will not experience academic growth." (*Id.*). Ladd further faults the ALJ for failing to discuss that Ladd had a fourth-grade reading ability and a third-grade spelling ability, and that the school's conference committee expressed that she was "not likely to achieve grade-level proficiency within the same time frame as other students." (*Id.* at 11-12 (quoting AR 307)). Additionally, Ladd points to that she was switched from the Core 40 diploma program to the general diploma program in the 2022-2023 school year, which she characterizes as a "regression" that contradicts the ALJ's outcome. (*Id.* at 13).

To reiterate, "an ALJ need not . . . discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation marks omitted) (alteration in

original). The evidence Ladd points to is not an entire line of evidence that supports a finding of disability. The ALJ penned an entire paragraph on the December 2022 IEP, acknowledging that Ladd has a "specific learning disability with it taking longer to complete assignments and tasks at hand." (AR 23 (citing AR 302-15)). The ALJ never suggests that Ladd did not need special education resources or did not have dyslexia or a learning disability. The ALJ observed that the IEP indicated Ladd was passing her six classes and was pursuing a general diploma with a high school graduation in June 2024. (AR 23-24; *see* AR 303, 306-07). Ladd's assertion that the IEP reflects that she will not experience academic growth is unfounded speculation. Quite to the contrary, the IEP states that Ladd's "cognitive ability is higher than it was at her previous evaluation, . . . and her overall ability is in the low average range." (AR 304). Ultimately, Ladd's argument centers on nitpicks and a plea to this Court to reweigh the evidence, which the Court cannot do. *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (stating that the court is not allowed to substitute its judgment for the ALJ's by "reweighing evidence" (citations omitted)); *see also Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("[W]e give the [ALJ's] opinion a commonsensical reading rather than nitpicking at it." (citation omitted)).

    Finally, Ladd asserts that the ALJ made a "clear acknowledgment that [Ladd] has failed to grow" by stating that Ladd's functionality has remained "consistent with the two prior unfavorable disability decisions in May 2019 and December 2021 . . . ." (ECF 16 at 13 (quoting AR 23)). Ladd contends that this statement reflects that the ALJ failed to apply the proper standard of comparing Ladd to her current peers, which Ladd contends would show that she is "falling further behind her peers and therefore, becoming more functionally impaired." (*Id.*). But Ladd's spin on the ALJ's statement is not a fair reading of the ALJ's decision. The ALJ actually

stated:

> The school records offer a summary consistent with the two prior unfavorable May 2019 and December 2021 ALJ decisions including last and most recent October 2018 psych educational evaluation for dyslexia, placing reading into the range of disabled, for a higher cognitive ability than established during previous testing three years earlier, and for October 2018 overall ability assessed in the low average range.

(AR 23 (citing AR 111, 302-16); *see also* AR 16). There is nothing in these statements by the ALJ referencing the two prior disability decisions that infers Ladd is falling further behind her peers and becoming more functionally impaired as Ladd suggests. (ECF 16 at 13).

Moreover, the ALJ's decision is amply supported by the opinions of the reviewing state agency physicians and psychologists, who found that Ladd has less-than-marked limitations in the domain of using and acquiring information. (AR 25, 121, 127); *see J.H.R. ex rel. Radford v. Astrue*, No. 1:07-cv-1584-DFH-DML, 2009 WL 692211, at *7 (S.D. Ind. Mar. 13, 2009) (affirming the ALJ's finding that the claimant had less-than-marked limitations in acquiring and using information despite a moderate learning disorder); *see also C.M.S. by Farley v. Berryhill*, No. 1:16-cv-00088-SEB-MP B, 2017 WL 3704689, at *3 (S.D. Ind. Aug.7, 2017) (affirming the ALJ's finding that the claimant had less-than-marked limitations in acquiring and using information notwithstanding poor school performance and special education services). "It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citation omitted); *see Thomas S. v. Kijakazi*, No. 1:22 cv 270, 2023 WL 2783196, at *5 (N.D. Ind. Apr. 5, 2023) (noting that the state agency doctors' review of the longitudinal record "strengthens the weight of their conclusions" (quoting *Flener ex rel. Flener*, 361 F.3d at 448)); *see generally Becky C. v. Kijakazi*, No. 1:22 cv 24, 2023 WL 195830, at *4

(N.D. Ind. Jan. 17, 2023) ("By making an RFC assessment consistent with the expert reviewing physicians' findings, the ALJ accounted for any limitations indicated by the [evidence at issue.]" (citations omitted)).

In sum, although the ALJ's decision is not perfect, the ALJ's assessment that Ladd has less-than-marked limitations in the domain of using and acquiring information is supported by substantial evidence, and the Court can adequately trace the ALJ's reasoning from the evidence to that conclusion. Therefore, Ladd's first argument does not necessitate a remand of the ALJ's decision.

### D. The Domain of Caring for Self

Ladd also contends that the ALJ's finding that Ladd had less-than-marked limitations in the domain of caring for self is not supported by substantial evidence. (ECF 16 at 15; *see* AR 25-26). This domain addresses "a child's ability to maintain a healthy emotional and physical state." SSR 09-7p, 2009 WL 396029, at *1 (Feb. 17, 2009). Ladd argues that the ALJ ignored multiple medical issues which SSR 09-7p specifically lists as evidence of a functional limitation. (ECF 16 at 14); *see* SSR 09-7p, 2009 WL 396029, at *6.[4]

Ladd first points to evidence that she engaged in self-injurious behavior. She cites a May 2022 note that documents she was not taking her medications regularly, a July 2019 note that she had contemplated cutting herself and a subsequent observation that she had five cuts on her stomach, a suicide attempt at the end of 2018, suicidal ideation in 2019 and 2021, and her

---

[4] SSR 09-7p sets forth the following examples of limitations considered in the caring for self domain: (1) consoling self with activities that show developmental regression; (2) has restrictive or stereotyped mannerisms; (3) does not spontaneously pursue enjoyable activities or interests; (4) engages in self-injurious behavior; (5) does not feed, dress, bathe, or toilet self appropriately for age; (6) has disturbance in eating or sleeping patterns; and (7) places non-nutritive or inedible objects in mouth. *Id.* "[These] are not the only examples of limitations in this domain, nor do they necessarily describe a 'marked' or an 'extreme' limitation." *Id.*

statement at a 2022 mental exam that she has threatened to harm herself or others. (ECF 16 at 15-16; *see* AR 428, 432, 486, 499, 518, 529, 556). She contends the ALJ ignored this evidence, and in doing so, failed to fairly evaluate the record. (ECF 16 at 16).

However, much of the evidence Ladd points to occurred during a previously adjudicated period prior to her alleged onset date of January 16, 2022. Further, Ladd's assertion of self-injurious behavior by failing to take her medications regularly is based on a single note in 2022. (AR 529). Yet, Ladd's mother testified that Ladd takes her medications on her own with only reminders from her mother. (AR 69). Also, the 2022 mental exam further states that Ladd was not currently suicidal and had not hurt others intentionally. (AR 518). Further, the ALJ thoroughly discussed Ladd's daily activities. Ladd worked for three different employers in 2022, though each of brief duration (AR 15,-16, 20); babysits for her sister's three-year-old child for short time periods (AR 16, 20); enjoys singing, drawing, and journaling (AR 21); uses social media and the internet (AR 22); has a boyfriend (AR 21); is independent in personal and self-care needs (AR 22); and performs simple household chores, such as making easy meals and doing laundry, with reminders from her mother (*id.*). As such, the ALJ fairly considered the relevant evidence of record and did not ignore a line of evidence that supports a finding of disability. *Deborah M.*, 994 F.3d at 788.

Ladd also argues that the ALJ ignored evidence of Ladd's sleep problems. (ECF 16 at 16). Ladd states that she complained to her providers about sleep problems throughout the record. (*Id.*; *see* AR 394, 486, 491, 507, 548, 552, 559, 613, 653, 655). Again, most of this evidence is dated during previously adjudicated periods prior to Ladd's 2022 alleged onset date. In any event, the fact that Ladd dealt with sleep disturbances and was prescribed Trazodone does not

equate to a marked limitation in the caring for self domain. *See McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *4 (7th Cir. Feb. 8, 2022) ("Medical evidence supports the existence of the condition, but the need for restrictions cannot be inferred from the diagnosis alone.").

Furthermore, the ALJ's finding that Ladd has less-than-marked limitations in caring for self is supported by the opinions of the reviewing state agency physicians and psychologists, who found that Ladd had no limitations or less-than-marked limitations in the domain of caring for self. (AR 25, 122, 128). As explained earlier, it is appropriate for an ALJ to rely on these doctors' opinions. *Flener ex rel. Flener*, 361 F.3d at 448; *Thomas S.*, 2023 WL 2783196, at *5. Indeed, the record is devoid of any medical source opinion finding that Ladd had marked limitations in *any* of the six domains. As such, Ladd has failed to carry her burden of providing medical evidence of disability. *See Best v. Berryhill,* 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ." (citation, brackets, and internal quotation marks omitted)); *Flener ex rel. Flener*, 361 F.3d at 448 ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citation omitted)).

In sum, neither of Ladd's two arguments warrant a remand of this case. The ALJ's decision is supported by substantial evidence that was fairly considered, and his reasoning was minimally articulated. *See generally Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) ("[T]he threshold for [substantial evidence] is not high."). The Court will not remand a case to the ALJ for further explanation [or to correct errors] where it is convinced that the ALJ will reach the same result, because that would be a waste of time and resources for everyone involved." *Cash v. Colvin*, No.

15

2:13-CV-118 JFB-PRC, 2014 WL 888897, at *7 (N.D. Ind. Mar. 5, 2014) (citations omitted); *see also Mork v Colvin*, No. 14-cv-333-jdp, 2015 WL 2372361, at *1 (W.D. Wis. May 18, 2015). Hence, the Commissioner's final decision will be affirmed.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Ladd.

SO ORDERED.

Entered this 18th day of October 2024.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge